ORAL ARGUMENT NOT YET SCHEDULED

No. 20-1335

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

NATURAL RESOURCES DEFENSE COUNCIL,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and
MICHAEL REGAN, Administrator, U.S. Environmental Protection
Agency,

*Respondents*.

On Petition for Review of Final Action by the
United States Environmental Protection Agency

## PETITIONER'S REPLY IN SUPPORT OF MOTION TO
## SUPPLEMENT THE ADMINISTRATIVE RECORD

Sarah V. Fort
Charles R. Corbett
Natural Resources Defense Council
1152 15th Street NW, Ste. 300
Washington, DC 20005
Telephone: (202) 513-6247
sfort@nrdc.org
ccorbett@nrdc.org

*Counsel for Petitioner*
*Natural Resources Defense Council*

Dated: August 19, 2022

# TABLE OF CONTENTS

INTRODUCTION ............................................................................... 1

ARGUMENT ..................................................................................... 2

I.  NRDC seeks to supplement the administrative record, not complete it ...................................................................... 2

II.  This Court may consider two EPA memos that show the Agency failed to consider issues raised by its own experts ............. 4

III.  This Court may consider expert declarations that provide technical background information about EPA's public-health and occurrence analyses ................................................. 11

CONCLUSION ................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Am. Wildlands v. Kempthorne*,
    530 F.3d 991 (D.C. Cir. 2008)..........................................................3, 4

*Animal Legal Def. Fund, Inc. v. Perdue*,
    872 F.3d 602 (D.C. Cir. 2017).......................................... 1, 2, 3, 4, 10

*Asarco, Inc. v. EPA*,
    616 F.2d 1153 (9th Cir. 1980) ...................................................11, 14

*Env't Def. Fund, Inc. v. Costle*,
    657 F.2d 275 (D.C. Cir. 1981)................................................2, 11, 14

*In re Subpoena Duces Tecum Served on the Off. of the*
*Comptroller of the Currency*,
    156 F.3d 1279 (D.C. Cir. 1998).........................................................10

*Kent County v. EPA*,
    963 F.2d 391 (D.C. Cir. 1992)...................................... 1, 4, 5, 6, 8, 9

*NRDC v. Pritzker*,
    828 F.3d 1125 (9th Cir. 2016) .........................................................10

*NRDC v. Train*,
    519 F.2d 287 (D.C. Cir. 1975)............................................................2

*Oceana, Inc. v. Ross*,
    920 F.3d 855 (D.C. Cir. 2019)............................................................3

*Oceana, Inc. v. Ross*,
    454 F. Supp. 3d 62 (D.D.C. 2020)................................. 6, 7, 8, 13, 14

*Reps. Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) .............................................................9

*Sw. Ctr. for Biological Diversity v. Babbitt*,
    131 F. Supp. 2d 1 (D.D.C. 2001) .......................................................7

## Statutes

5 U.S.C. § 552(a)(8)(A)(i)(I) ............................................................ 9

42 U.S.C. § 300g-1(b)(1)(A)(ii) ...................................................... 4

42 U.S.C. § 300g-1(b)(1)(C) ............................................................ 4

## Federal Register Notices

84 Fed. Reg. 30,524 (June 26, 2019) ............................................ 5

## Other Authorities

EPA, *About the Office of Children's Health Protection*
(June 21, 2022) .............................................................................. 4

## INTRODUCTION

This Court should allow NRDC to supplement the record with four exhibits that provide relevant background information showing that EPA did not consider all the relevant factors when it reversed its decision to regulate perchlorate. *See Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 611, 620 (D.C. Cir. 2017). In opposing NRDC's motion, EPA and American Water Works Association ("the Water Utilities") rebut at length an argument that NRDC does not make. NRDC does not seek to complete the administrative record with additional documents; the proper scope of the record is therefore irrelevant.

Where EPA and the Water Utilities do respond to NRDC's arguments to supplement the record, they miss the mark. The two EPA memos NRDC offers reveal "position[s] of the agency's own experts on . . . question[s] central to this case." *Kent County v. EPA*, 963 F.2d 391, 396 (D.C. Cir. 1992). EPA's record decision did not disclose, or respond to, the concerns they raised. Considering these publicly available documents will not chill agency deliberations, and is

1

consistent with this Court's decision in *Kent County*—a case EPA and the Water Utilities ignore.

NRDC also offers two expert declarations that provide background information on statistical and public-health methodology and detail the ways EPA departed from proper methods. These declarations may aid the Court's consideration of whether EPA employed sound science in this "highly technical case." *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981).

Accordingly, the Court may consider all four documents.

## ARGUMENT

## I. NRDC seeks to supplement the administrative record, not complete it

EPA and the Water Utilities conflate *supplementing* the administrative record, as NRDC seeks to do here, with *completing* it. A motion to complete the record asserts that the agency's certified record omits documents that should have been included. *E.g.*, *NRDC v. Train*, 519 F.2d 287, 291-92 (D.C. Cir. 1975). A motion to supplement the record, meanwhile, offers extra-record evidence to aid effective judicial review of the agency's decision. *E.g.*, *Animal Legal Def. Fund*, 872 F.3d at 611, 620.

Much of the legal analysis raised by EPA and the Water Utilities is therefore irrelevant to resolving NRDC's motion. The presumption of administrative regularity, and the question of whether particular documents are deliberative and predecisional, *see* EPA Opp'n 12-15, 17-19; Water Utils. Opp'n 3-4, guide resolution of motions to *complete* the administrative record. *See Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). They do not answer whether documents outside the record will assist the Court in reviewing EPA's decision.

This Court has articulated several circumstances in which parties may supplement the administrative record, including when documents provide "background information" that will help the Court "determine whether the agency considered all of the relevant factors." *Animal Legal Def. Fund*, 872 F.3d at 611 (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). Because the documents NRDC offers provide background information demonstrating that EPA did not consider all relevant factors, they will aid this Court's review of EPA's decision not to regulate perchlorate. *See id.*

## II.    This Court may consider two EPA memos that show the Agency failed to consider issues raised by its own experts

The EPA Office of Children's Health Protection Memo and the EPA Briefing Memo to OMB contain "position[s] of the agency's own experts on . . . question[s] central to this case," *Kent County*, 963 F.2d at 396, and provide "background information" showing that EPA did not "consider[] all the relevant factors," *Animal Legal Def. Fund¸* 872 F.3d at 611 (quoting *Am. Wildlands*, 530 F.3d at 1002).

The EPA Office of Children's Health Protection Memo reveals that office's position on an issue central to EPA's decision not to regulate: whether EPA selected "levels of public health concern" for perchlorate exposure that would prevent adverse health effects, including for sensitive populations like children. 42 U.S.C. § 300g-1(b)(1)(A)(ii), (b)(1)(C); *see* Pet'r Opening Br. 41-55. The memo—sent by EPA's internal expert body tasked with "ensur[ing] that all EPA actions and programs address the unique vulnerabilities of children,"[1]— makes clear that the Agency had not. In it, the Office of Children's Health

---

[1] EPA, *About the Office of Children's Health Protection (OCHP)*, https://www.epa.gov/aboutepa/about-office-childrens-health-protection-ochp (last updated June 21, 2022).

Protection concluded that exposure to perchlorate at EPA's chosen threshold presented "a significant health problem for children." EPA Office of Children's Health Protection Memo *1. The office "strongly recommend[ed]" a lower threshold. *Id.* Nothing in the record discloses these experts' concerns, or explains EPA's decision to disregard them.

The EPA Briefing Memo to OMB likewise reveals an important factor not addressed in the record. When the Chamber of Commerce proposed selectively modifying EPA's perchlorate sampling data, EPA staff rebuffed the suggestion because it carried significant risk of introducing statistical bias into EPA's assessment of the extent of perchlorate contamination. EPA Briefing Memo to OMB *1-2. Citing that risk, EPA initially rejected the Chamber of Commerce's proposal. *Id.* *2. Neither of these background facts are in the record. Instead, EPA simply announced—without acknowledging the potential for bias, or explaining its reasoning—it had adopted the Chamber's approach. 84 Fed. Reg. 30,524, 30,542 (June 26, 2019).

This case thus includes documents, like those in *Kent County*, that relate to "position[s] of the agency's own experts on . . . question[s] central to this case," 963 F.2d at 396. Neither EPA nor the Water

5

Utilities acknowledge *Kent County*, which undermines their arguments in two ways.

First, *Kent County* makes clear that, though they are generally not part of the administrative record, the Court may supplement the record with "internal EPA documents." 963 F.2d at 395-96. NRDC seeks to supplement the record in a manner consistent with this precedent.

Second, *Kent County* undermines EPA's argument that, because the agency memos do not raise "an 'entirely new' general subject matter," they do not identify factors EPA failed to consider. EPA Opp'n 20 (quoting *Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62, 70 (D.D.C. 2020)); *see id.* at 15-17, 20-22; Water Utils. Opp'n 5-8. In *Kent County*, the Court supplemented the record with an agency document that related to a central issue in the case—"the methodology used by the EPA in its groundwater tests." 963 F.2d at 394. While EPA explained its groundwater-testing methodology on the record, it did not adequately disclose, or explain its reasons for not following, the different methodology its experts recommended. *Id.* at 395-96. This Court

accordingly considered the Agency's expert documents as supplemental evidence. *Id.* at 396.

Even the case EPA quotes for its "entirely new" standard for supplementing the record does not apply that standard in the way EPA argues for here. There, the court addressed at "what 'level of generality' courts should 'define the relevant factor,'" *Oceana, Inc.*, 454 F. Supp. 3d at 70 (quoting *Sw. Ctr. for Biological Diversity v. Babbitt*, 131 F. Supp. 2d 1, 8 (D.D.C. 2001)): "consideration of the intermediary evidentiary factors which lead to the ultimate conclusion are the very means by which [an] agency renders its decision," and any of these intermediary factors "can be a 'relevant factor' justifying supplementation of the administrative record if ignored." *Id.* (quoting *Babbitt*, 131 F. Supp. 2d at 8). Indeed, the court in *Oceana, Inc.* concluded that part of the expert's declaration *did* identify "gaps in the agency's analysis," and admitted that part as supplementary evidence. *Id.* at 72-73.

That the record here contains discussion of exposure thresholds and modification of EPA's perchlorate sampling dataset does not mean the Agency considered and responded to the issues raised by its own experts. NRDC does not contend that EPA failed to consider "the

7

specific threshold" for IQ-loss referenced in the Office of Children's Health Protection Memo. *Contra* Water Utils. Opp'n 5-6. Rather, the memo warns that the threshold EPA *did* select will cause significant health problems for children. *See* EPA Office of Children's Health Protection Memo *1. Neither EPA nor the Water Utilities have cited any record document in which EPA grapples with that concern.

Similarly, NRDC does not assert that EPA failed to consider "the issue of whether and how to update perchlorate occurrence data." *Contra* Water Utils. Opp'n 7. Rather, EPA failed to acknowledge the risk—identified by its own experts—that modifying the perchlorate sampling data in the way the Chamber of Commerce proposed would create a biased sample and systematically underestimate current perchlorate contamination. *See* EPA Briefing Memo to OMB *2. Again, neither EPA nor the Water Utilities have cited any record documents addressing this risk.

The two EPA memos hence cast light on the exact type of "intermediary evidentiary factors" otherwise not discussed in the record. *Oceana, Inc.*, 454 F. Supp. 3d at 70 (citation omitted). Denying the relevance of these documents "would be inconsistent with rational

8

decisionmaking by an administrative agency." *See Kent County*, 963 F.2d at 396.

The Court should not credit EPA's argument that supplementing the record with two *already public* documents would chill agency deliberation.[2] *See* EPA Opp'n 17. The Freedom of Information Act (FOIA) expressly allows agencies to shield from disclosure documents that could cause reasonably foreseeable harm, including by chilling deliberation. *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369-70 (D.C. Cir. 2021) (discussing FOIA Improvement Act of 2016 and 5 U.S.C. § 552(a)(8)(A)(i)(I)). EPA nonetheless released these documents to the public. The Agency cites no authority for its suggestion that, having publicly released these documents, it can invoke generalized concerns about chilling effects to shield them from

---

[2] Both documents are publicly available at https://foiaonline.gov/ foiaonline/action/public/submissionDetails?trackingNumber=EPA-2020-006721&type=request. The EPA Office of Children's Health Protection Memo is in the release titled "EPA-2020-006721 Responsive Records 7"; and the EPA Briefing Memo to OMB is in the release titled "EPA-2020-006721 Responsive Records 6." EPA released both documents after it issued its final 2020 decision to not regulate perchlorate. *See id.* NRDC was not aware of these documents before their release, and therefore could not submit them during the notice-and-comment period. *See Kent County*, 963 F.2d at 395.

particular uses. Supplementing the record will not make these documents any more public, and thus cannot be expected to have any independent chilling effect.

Nor does it matter whether either memo accurately reflects the position of the Agency as a whole. *Contra* EPA Opp'n 18. EPA's subjective intent is immaterial to NRDC's claims. *See In re Subpoena Duces Tecum Served on the Off. of the Comptroller of the Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998). What matters is that, at minimum, the memos reflect the views of agency experts who raised issues that EPA should have, and did not, consider on the record in reaching its decision. They thus provide evidence of important aspects of the decision not reflected in the record. *See Animal Legal Def. Fund*, 872 F.3d at 620 (background information may include "records the agency had in its possession at the time of its decision"); *cf. NRDC v. Pritzker*, 828 F.3d 1125, 1139 (9th Cir. 2016) (holding that agency conclusion "in direct conflict with the conclusion of its own experts" is "arbitrary and capricious" (internal quotation marks and citation omitted)).

10

***

NRDC offers two publicly available documents, reflecting the views of EPA's own experts, to inform this Court of relevant factors unexamined in the record. This Court may consider this supplemental material to aid in its review.

## III. This Court may consider expert declarations that provide technical background information about EPA's public-health and occurrence analyses

This Court may also consider the Solomon and Curriero declarations, which provide background information on EPA's analysis in this "highly technical case." *Costle*, 657 F.2d at 285. The Solomon and Curriero declarations explain aspects of statistics and public-health analysis that relate to EPA's assessment of perchlorate, and thus may aid this Court in determining whether the Agency acted properly in reaching its decision. The Court need not "take the agency's word that it considered all relevant matters." *Id.* (quoting *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980)).

The Solomon Declaration summarizes scientific literature to explain that EPA failed to consider the significant impact that "an average loss of even a single IQ point" has on some children. Solomon

11

Decl. ¶ 44; *id.* ¶¶ 42-45. EPA failed to acknowledge or respond to established public-health findings that Dr. Solomon identifies. *See id.* ¶¶ 3-4. EPA did not address:

- The fact that an *average* decline of one IQ point across a large population "will mean a much larger loss for some individuals," *id.* ¶ 42;

- The effect that an average decline of one IQ point has on individuals at the high and low ends of the IQ spectrum—namely, that it "substantially decreases the number of people" at the upper end of the IQ scale, while "substantially increas[ing] the number of children at the lower end of the scale . . . that typically triggers special education services," *id.* ¶ 43; and

- The heightened significance of an average decline of one IQ point for disadvantaged population groups, *id.* ¶¶ 44-46.

Similarly, the Curriero Declaration identifies types of bias that can occur in statistical samples and explains the selection bias and design bias evident in EPA's modified perchlorate occurrence dataset. Curriero Decl. ¶¶ 20-22, 25. EPA's record documents did not discuss these biases. Dr. Curriero also identifies sources for potential increases

12

in perchlorate contamination that EPA did not consider on the record, *id.* ¶ 16, and highlights EPA's failure to provide a statistically sound explanation for its decision not to consider other available and more recent sampling data for perchlorate, *id.* ¶¶ 26-29.

Dr. Solomon's and Dr. Curriero's disagreements with EPA's conclusions follow from the errors they identify within EPA's public-health and statistical analysis. NRDC offers these declarations not for their conclusions, but for their explanations as to how the Agency's analysis departed from sound scientific methods. The Court may therefore consider both declarations while reviewing the Agency's decision. At minimum, should the Court conclude that any part of either declaration is impermissible, the Court may still supplement the record with their explanatory technical material. *See Oceana, Inc.*, 454 F. Supp. 3d at 69-70, 72-73 (supplementing record with part but not all of expert declaration).

Finally, EPA's argument that supplementation is foreclosed because the Agency adequately considered the topics covered in the Solomon and Curriero declarations, EPA Opp'n 24-25, "puts the cart before the horse," *Oceana, Inc.*, 454 F. Supp. 3d at 72. EPA "confuses

13

the [merits] question"—whether the agency properly considered all the

relevant factors—"with the admissibility question"—whether the Court

may consider this background information to aid in that very inquiry.

*Id.* The offered expert declarations provide technical explanations of the

scientific literature and statistical methods that inform the complex

regulatory problem before EPA, and are therefore admissible as

supplemental background information. *Accord Costle*, 657 F.2d at 285.

These declarations contextualize statistical and public-health concerns

that NRDC and other commenters raised through notice-and-comment,

but that were neither noted nor responded to in the Agency's

explanation of its decision. Though EPA argues that it addressed these

issues on the record, *see* EPA Opp'n 24-25, the Court need not "take the

agency's word that it considered all relevant matters" regarding its

perchlorate decision, *Costle*, 657 F.2d at 285 (quoting *Asarco*, 616 F.2d

at 1160). Thus, the Curriero and Solomon declarations may aid this

Court's review of EPA decision.

## CONCLUSION

NRDC respectfully asks this Court to supplement the

administrative record with four documents that provide background

information that may aid this Court's review.

Dated: August 19, 2022                Respectfully submitted,


                                      */s/ Charles R. Corbett*
                                      Charles R. Corbett
                                      Sarah V. Fort
                                      Natural Resources Defense Council
                                      1152 15th Street NW, Suite 300
                                      Washington, DC 20005
                                      Telephone: (202) 770-1855
                                      ccorbett@nrdc.org
                                      sfort@nrdc.org
                                      *Counsel for Petitioner*
                                      *Natural Resources Defense Council*

## CERTIFICATE OF COMPLIANCE

The foregoing reply brief was prepared in 14-point Century Schoolbook font using Microsoft Word 365, and it complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E). The reply brief contains 2,580 words and complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C).

*/s/ Charles R. Corbett*
Charles R. Corbett

16

## CERTIFICATE OF SERVICE

On August 19, 2022, I served a copy of the foregoing reply brief using this Court's CM/ECF system. All parties are represented by registered CM/ECF users that will be served by the CM/ECF system.

*/s/ Charles R. Corbett*
Charles R. Corbett